Good morning. May it please the court. My name is Peter Wolfe. I'm the federal defender in this district and represent Mr. McCandless. It started off as a joint appeal, but Mr. Carrera's case was dismissed as moot by the court. So we have a pretty narrow issue presented, and it was specifically presented as a narrow issue by the district judge, who I think wanted guidance from this court as to whether or not there is power in the district court, when a 20 to 55 petitioner's petition is pending, to take up the question of whether he can be admitted to bail. And so the district court was at pains not to reach the merits, not to do anything but deny it without reaching the merits, in order to have the matter presented for this court's guidance, because remarkably enough, this court has never actually ruled in the 20 to 55 context whether or not that power exists. Many district courts within the circuit, including four out of the five judges in our district, have concluded they do have the power. Other circuits that have considered the question have concluded that the power exists. And I think most importantly, the Supreme Court, in Dietz's case, has basically set forth the question, or set forth how you analyze the question. And so basically, the Supreme Court said that there are two things which limit a district court's inherent authority. The first is that exercising the inherent authority must be a reasonable response to a problem that confronts the court's fair administration of justice. And here the problem that the district court, any district court, deals with in a habeas case is, what about the question of over-served time before we get to the merits, before the district court can get to the merits? Well, maybe let me jump in, because I think I'm, I will confess that I'm sort of leaning a different way, maybe from the way you and the district court would like us to decide the case. So help me understand why, let's assume that there is power, there is the authority on the district court's part. How is your client's case even in the ballpark for someone who would get that kind of relief? What I don't understand is I think you say, well, if that third conviction were thrown out, he would get 71 months, or at least there's a high likelihood that he would receive a sentence of 71 months. And I guess I don't get that, because the way I look at it, he's going to end up at 120, at least, maybe 130, somewhere in there, perhaps, and we could wait until Beckles has decided. Your client won't get out if he gets 120 until the middle of, what, 2018 or something, right? So I don't see the urgency in letting your client out unless you're right that somehow, boy, if Beckles comes out his way, he's going to get, he would get 71 months. And so if it's not even a close case, I don't know why we would use this case as the vehicle to resolve this otherwise unsettled question. Well, the reason you would do it is because the district court needs guidance and because the district court was at pains to present a question that didn't go to the merits. Yeah, that's fine. That's what I said. I understand why you guys tried to structure it this way. I understand why the district court did that. But we're not in the business of resolving questions that aren't necessary. And as I said, if this is just not even in the ballpark, even if the authority existed, if it's not even in the ballpark, we could just, I mean, I think we have to treat it as a petition for writ of mandamus anyway. And we just say, well, obviously there's no clear error here. Because this guy, even if the authority existed, he wouldn't be entitled to release. I think you're wrong about that, Your Honor. Let me hear it. That's why you're here. So let's hear it. So what happened here is that the finding that he was a career offender, which was based on a burglary conviction, a Hawaii burglary conviction, which I think everyone has now agreed, at least in our district, Hawaii burglary can never count as a crime of violence under a proper categorical analysis. If he's not a career offender, then the guidelines, which were way higher because of that finding, are substantially lower. And because he received a downward departure for cooperation, if you analyze the extent of the departure that was granted, which he did get, then you think, well, if his guideline starting point was twice as high as it should have been, and if he received about a 40-something percent reduction, which he did, it's got to be worth something even if with a lower starting point. I mean, I don't think the district court is bound to apply on resentencing when we win this case in the district court the same percentage of reduction. But he is at a point where he may well be over serving time. Maybe, maybe not. I mean, I would posit that it's completely speculative at this stage as to whether your client would end up with a sentence below, as I said. I mean, well, help me understand, why is he not going to be subject to the 10-year mandatory minimum? Because the government moved for a downward departure under 5K1 and 3553E, and that broke the mandatory minimum because the district judge granted that motion at the original sentencing. So he didn't get a sentence that was below 10 years, but the mandatory minimum, the requisite government motion to break it was filed, and the court granted that motion. It didn't go below 120 because he was starting at, I think, 262 on the career offender finding. Well, tell me if I'm wrong on this. I would say, no, we don't know that that's the reason. Maybe the judge said, all things considered, I think the guy should do. What did he get, 104 or 145? 45. I can go below 120. Thanks very much, government. But you know what? I think 145 is about as low as I'm willing to go, just in the whole scheme of things, not because the starting point was 260-something. No, no. All I'm saying is that this is not the right case. I would submit to, I mean, the case that we dismissed as moot was a great case for this, and I know that you guys wish that were the case, of course, but this one strikes me as a terrible candidate for this person's going to get released. Well, I think that here's the problem with your analysis, as I see it, Your Honor. You can't get to 145 from a starting point that is 100 months below 262 on the same record and say that's a reasonable outcome. It's impossible. Say that again. The facts that justified, as the district court concluded, the facts that justified reaching 145 months as the proper sentence when you're starting at 262, on that same record you can't get to 145 with a starting point that's way lower. There's no way to do it. It takes the whole idea of sentencing and proportionate sentencing and appropriate consideration for cooperation and turns it on its head if the starting point is way different and you say you could reach the same result. Remind me, what's the guidelines range if the career offender thing is knocked out? I would have to look at my brief to say that. Well, okay, but isn't it like twice what? Isn't it twice or close to twice the 71 months you say that he would get? Right. Right. I mean, you're assuming that the judge would go below what the revised guidelines sentence would call for. And it's hard for me to understand how a court having, in the first instance, granted a downward departure that amounts to 44%, say, would come back on the same record and say, okay, now that we have a lower starting point, here's what I'm giving you for all the cooperation you rendered. I think on this record it's perfectly plausible because the judge had the authority to go below 120 and didn't. I mean, at the point when this case came before the district court for original sentencing, the judge could have gone down to 71. There was nothing that stopped him from doing that. Well, there is something that stops him from doing that because if he is applying the Ninth Circuit standard on how to reward cooperation. So let's say he goes through the 3553A variance factors and concludes, for whatever reason, okay, I'm starting at the guideline range. I'm reaching some number on the variance. Once he starts to take up the question of cooperation, he's limited to applying the standard for cooperation. In other words, he can't take into account other things. So what you have, I think, and it wasn't parsed out or split up in the original sentencing hearing, but what you have is a reduction by about half from a little less than half from the low end. And it's hard for me to understand how you could take that and come back and say, well, I'm going to reach the same result on the same record when my starting point is way lower. Otherwise, the whole notion of the Supreme Court that the starting point has to be done right and has to be the touchstone, the lodestar, and take it into account all through the sentencing process makes no sense if you can reach the same result from a far different starting point. I think it makes perfect sense, frankly, but okay. I guess we'll have to agree to disagree on that point. We apparently have some problem with this in the district courts and in other circuits of whether or not a district court judge has inherent authority to grant bail on these 2255 cases. So I want to get you back to that for just a moment. And regardless of how the district court came out here, we have to look at it freshly, or how the other circuits have done it, we have to look at it freshly. The difficulty I have with it and this appeal under collateral order doctrine is what we decided in land. And although you may disagree with land, the land said that it's not there and we're bound by land. How would we distinguish land case to get to where you want to be? So here's what I think you would do. You would look at land and you would see that land cited Flanagan and pinpoint cited Flanagan to page 265 of that decision. And page 265 of the Flanagan decision, this is in the U.S. reports, basically contains all the usual language you would expect about how, you know, piecemeal appeals, et cetera, are not allowed. They're very narrow. But then if you turn the page to 266, what Flanagan talks about is the three kinds of cases where interlocutory appeals under the collateral order doctrine are permitted. And the first one is an order denying a motion to reduce bail may be reviewed before trial. And the Flanagan court cites Stack v. Boyle. Now, here's what's important about Flanagan. It's a 1984 case, February it's decided. It's argued in late 83. 1984 is an old case? Flanagan. Okay. It's not an old case. I remember it. But it's before the Bail Reform Act came out. And so it's in the context where every single federal case except the capital case, bail was set. And this case they cite, Stack v. Boyle, if you go back to that, which is a 65-year-old case, what Stack says, and this is Chief Judge Vinson, who is not known as any friend of any criminal defendant that I can remember. Well, I couldn't remember it, but that I ever read about. He starts the substantive discussion in Stack by saying this, from the passage of the Judiciary Act of 1789 to the present, so the present is 1951, federal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail. So the context in which Land read Flanagan and read Stack, or read that rule, seems like they just overlooked it. You don't like how they reasoned Land. But the holding of Land governs us. Of course you can go in bank to change Land, but we have that problem. But I understand your argument of why. But then if you get to the place where you think there is a possibility, then you get into the Section 1982B problem, and there it can be granted, if it materially advances, the ultimate termination of litigation. Granting bail never increases or decreases the litigation. We're just letting a person out. So you still, don't you, have to come under the umbrella of 28 U.S.C. Section 1292B. How do you get around that? Well, if you don't want to take up the Mandamus question, which is what they did in Land, so they ultimately reached the right result. We'll get to the Mandamus in a minute. Okay. So under 1292B, it allows for interlocutory appellate jurisdiction in the civil proceeding if it involves a controlling question of law and the immediate appeal from the order may materially advance the ultimate termination of litigation. So I think that actually that would apply here because what you have as a district judge would have, I think, a concern. You have a petitioner who's in front of you. Maybe he's over-serving time, but maybe he isn't, but you're concerned about it. So if you can take up the question of bail, you can give yourself some time without having to deal with the over-service problem if you're waiting for other important cases to be decided, which is exactly the situation we find in this Johnson litigation. Well, Ed, how does that materially advance the ultimate termination of the litigation? That's the point. And I don't see how granting bail ever materially advances the termination. Is it because the district judge isn't rushed into deciding the merits when he wants to wait for the Supreme Court, say, to decide the Beckles case or to decide the Welch case, which ultimately was decided but was pending? And so the district judge— It doesn't materially advance the termination. You're saying, well, he's got some case down the line he wants to hear from. That's going to advance the termination. That's going to decrease it. So I think that maybe we're disagreeing about the meaning of the term advance. Okay. Advance, to me, in this context, in this statute, doesn't mean bring it more forward in time. Okay. I think it means help it to be resolved in an orderly, correct fashion. Okay. That would be my understanding. Okay. Then we get to the thing, if we don't care for that, then your next would be mandamus. Exactly. Okay. And in mandamus, which in my view does apply, at least until it's corrected by colleagues, then we go to this very well-written case of Baumann, and we take the five factors. As you go through the five Baumann factors, I have great doubt about whether they're met. So maybe you could educate me on how this particular case, that is, the granting of bail during the 2255, meets the mandamus standard, restricted mandamus standard. The consideration of bail, I guess I would say. So the first factor is the petitioner lacks other adequate means of relief. If you're right about 1291, the collateral order doctrine, and about 1292B, then he's got no other adequate means of relief other than mandamus, so I think we're okay on that one. The petitioner will be harmed in a way that is not correctable on appeal. If the district court has no power to consider bail for a 2255 petitioner, which is the question presented here, and if the district court believes that the petitioner is over serving time if his petition is well taken, but the district court isn't sure about the merits of the petition, then the petitioner face is being harmed in a way that's not correctable, because once you've over served time, that can never be corrected, and the Supreme Court has said that. Go to three. That's the troubling one. The district court committed a clear error of law. Well, so if land is correctly decided on the mandamus question, which I guess I have to say it is, then when the district court concluded that it had no power in a 2055 case where there's power in a 2054 case, that's got to be a clear error of law, because the very concerns about finality and not interfering with the administration of justice are lessened in a 2055 case, because ordinarily these cases are coming back to the same judge who did the sentence. That's not true here. But you have the situation here where we're saying that he was clearly on the matter of law for following land, which binds this panel. Well, no, but land is a 2054 case. Okay. And here's the other thing that as a matter of common sense I think might be applicable here. If you look at Federal Rule of Appellate Procedure 23, the district court would have had power to grant bail to McCandless if he had denied his petition on the merits. And so the idea that he can't do that before considering the merits of the petition just makes no sense, makes no common sense. So the fourth factor under Bauman, the error is oft repeated and manifests of patent disregard of federal rules. Well, I think there Dietz v. Bolden tells us what the court's inherent powers are, and there's no interference using that analysis. And the order raises new and important issues. I think the court's order, the district judge's order, which he rather carefully parsed out, that he didn't feel he had the power to act because it wasn't clear from the court's precedents that he did have the power to act, is the kind of circumspect conservative with a small c approach to matters that people expect judges to adhere to. And so I think that this beats the Bauman factors. And the other thing about Bauman is you don't have to meet all five in order to find it. Yes, that's right. Those are the factors when you determine which are most important. Well, that was very helpful. Thank you. Thank you. Good morning, Your Honors. Marian Purcell, Assistant U.S. Attorney for the United States. Unfortunately, and I say unfortunately because I rather agree with Judge Watson that it would be nice if the district court could get the direction that the district court was looking for in this case. This really is the wrong case to reach that issue for the reasons that Judge Watford was emphasizing and for others as well. Let's start where we just left off with the writ of mandamus. One of the Bauman factors is that the petitioner will be damaged or prejudiced in a way not correctable on appeal for the reasons that the court was just discussing. This petitioner will not. Not only do we have the issues with respect to the possibility that he would get a sentence that would not require him to be released today, and let me pause on that for a moment, his release date is in 2020. It's not this year. It's not next year. It's not the year after. So even if the judge reduced the 145-month sentence because of the change in the guideline range, the district judge might very well still sentence this defendant to a sentence that would require him to stay in jail during this period of time this year and next year. So we have a situation in which there is no way to know whether the defendant would be released if he won. But I just took a look back at my brief to the district court on the Section 2255 motion itself, and I didn't even get there because the petition itself was untimely and he didn't meet the factors that would be required to reach an untimely motion. He failed to raise the issue on appeal. He did not have an intervening. The most likely basis for excusing the untimely 2255 would be a Supreme Court decision that had been held to be retroactive that was applied to him, and that did not occur here. Johnson is not directly applicable to him. He is not an ACCA defendant. He's a career offender under the sentencing guidelines. The Supreme Court has not yet decided those issues. He doesn't have the argument. His petition was untimely to begin with, and so it would not have been reached, never mind granted. And if it had been granted, then we get to the issue of what his sentence would be. So that's just one issue. That's one factor of the five Bauman factors. Important, perhaps, to note that this court in In re Roe, which is a case in which the court issued a writ of mandamus, the court observed that the use of mandamus, quote, is reserved for exceptional circumstances amounting to a usurpation of power. That's hardly what occurred here. In fact, if anything, Judge Watson was doing the opposite. He was being very conservative. This is not a case where mandamus should issue. And as I said, perhaps that's unfortunate. It would be nice if the district court could get the guidance that this court was looking for. I am particularly concerned about that because I fear that what we may be looking at is an avalanche of bail motions in case after case after case after case. We have already seen it in miniature in this district. Once the issue got raised, it got raised in a three- or four-month period. The brief notes, 24 bail motions were brought in a very small district. And that can only increase if the possibility of bail pending in 2255 is disseminated, so to speak, if people are more and more concerned about it. I understand why you make that argument, but you understand why that won't control whether we do what we must do. Yes, Your Honor, I do, with one caveat, which is that in what I think is the unlikely event that you go through all of those steps and conclude at the end of that analysis that this court on this case should hold that district courts have the right, right is the wrong word, have the authority to grant bail pending the determination of a Section 2255 motion. I would hope, to put it mildly, in fact, it's my bottom line, I would hope that this court would accompany such a ruling with very, very narrow circumstances under which that could occur. And so in that sense, I think it is this court's concern because if the district court has such authority, it should be clear from the outset how rarely that should be applied. And I truly mean rarely because one of the problems that I have, and I'm now getting past the jurisdictional issues and should the court reach it at all, but one of the deepest concerns that I have about this case is when you describe something as extraordinary, frankly, every convicted defendant sitting in jail thinks that his sitting in jail is extraordinary. I'm sure I would, too. I think that's a normal reaction. And I think that simply saying that it should be granted only under extraordinary circumstances will not discourage the bringing of the motions. And the bringing of the motions is what causes an enormous expenditure of resources on the part of the court. And I think equally importantly, it's an expenditure of resources that does not resolve a real pending issue. The appellant relies, of course, on Dietz v. Boudin, the recent Supreme Court case talking about inherent powers. Dietz held that the exercise of an inherent power must be a reasonable response to the problems and needs confronting the court's fair administration of justice. In that context, I wanted to talk a little bit about what the problem is. We have had some 50 years or so of jurisprudence on this issue, and we have until this year exactly one case in which the court held that bail pending the determination of a Section 2255 should be granted that was not overturned on appeal. Exactly one in the United States. So how big a problem is this, really? Court after court after court after court has said, assuming arguendo, I have the power to grant bail pending this Section 2255 motion, I declined to exercise that power. Why? A host of reasons. Most Section 2255, as a matter of statistics, as a matter of fact, most Section 2255 petitions are not ultimately successful. That's not surprising. They come at a point when the defendant has been convicted of the crime, and that conviction has become final. There has already been the availability of a review. The defendant is either elected not to appeal. Can I jump in? Let's talk about this case. You started out by saying that this is the wrong case, and you said for a host of reasons. I wanted to hear you elaborate more on why you think we should basically pass the buck, I guess, to another panel to ultimately tackle the authority issue, because that does need to be resolved eventually, it seems to me, notwithstanding. You're right. There would be a very rare case in which someone would actually end up getting that relief. But nonetheless, I think district courts do need to know whether they have that power. So why is this the wrong case? Help me with that. Well, this is the wrong case for the reasons that Your Honor pointed out before. The guideline range of the sentencing in this case was 262 to 327 months. If he had not been a career offender at the time, the guideline range would have been 151 to 188 months. He was sentenced below the guideline range that would have applied if he had not been a career offender. As I said before, sure, the court might have elected to go down even farther if the starting guideline range had been lower. That still doesn't mean that this defendant would be entitled to release today, because his release date is several years in the future. So you, I gather your position is simply that although on resentencing, let's assume, again, Beckles comes out the way that the defendant hopes, on resentencing, you concede that the district court could go down, I guess, as low as, let's say, 71 months. And if it did, obviously he would have served well more than that amount of time. I do concede that, Your Honor. I do concede that. Okay. So you say this is the wrong case because the likelihood that, if we're trying to play out how this case would end, the likelihood that he would ultimately get that sentence is just too low to justify granting him bail? Your Honor, every court that has talked about bail pending the determination of a 2255 has talked about what the standards are that would apply, talk about extraordinary circumstances. Frankly, Your Honor, if this case presents extraordinary circumstances, then every Section 2255 does except the ones that can be dismissed on reading the petition without doing any further work at all, without an answer. Because is it theoretically possible? Yes, it is. Is there any likelihood of it? Of course not. And there are no cases— Why do you say, of course not? I mean, your opponent has made the argument that, at least if you applied the same percentage departure from the starting point that the district court used the first go-round, he would end up with a sentence of 71 months. So why do you say that there's just zero likelihood that that's going to occur? Well, here are some of the impediments between here and there. Based upon the law, it is frankly unlikely that Beckles will go the way that the district court wants. That's a different issue. I hear you on that. I'm putting that aside. Let's focus on extraordinary circumstances. But that's part of the—that's one of the pieces of the puzzle. See, I read Land—I'll just read you the sentence in Land. Land says, Bail pending a decision in a habeas case is reserved for extraordinary cases involving special circumstances or a high probability of success. I think the high probability of success goes to whether Beckles is going to come out his way. Perhaps you'd still need some kind of special extraordinary circumstances, whatever we call them. And I think here, in this context, that's—if I were to ultimately win, I would be entitled to a sentence or I would get a sentence that's, you know, below, above, you know, what I've already done, and so I will have over-served time. That's a pretty compelling special circumstance, it seems to me. Especially in the—so that's why the ACCA cases are so much better, right? If somebody had already served more than the 10-year statutory max that, you know, they would have been subject to absent the enhancement, that's a pretty compelling case. So I focus on this case, and I just think your position is that, sure, it's theoretically possible that he could end up getting a sentence that would be below what he had already served, but it's just too unlikely? That's—is that ultimately what we're—what you're saying? Yes. I think it is, at least in part. His petition was untimely. He has to win a whole set of things before the court addresses the issue. And then when—assuming all of those things play out the way that the petitioner wants it to, then the district court then has to make a determination, and there was nothing illegal— there would be nothing illegal about him reimposing the exact same sentence, and even if he reduced the sentence somewhat, it still would not allow this defendant to be released immediately. There's one— Well, let's say that the revised guidelines range, instead of being whatever you said it was, 150-something, let's say it was 71 to 97 months, right? So in that scenario, assuming—and let's assume that somehow there was a high probability that Beckles was going to come out his way. In that scenario, isn't that—that seems to me much closer to the kind of case where a judge might say, you know what, it looks like you're going to win. If you do win, the revised guidelines range is going to be below what you've already served. Maybe I should grant you bail. You're saying that's not—that wouldn't be the case to warrant that relief? Your Honor, if that were the situation, if the district judge looked at this fact pattern and said, I think Beckles goes the Petitioner's way, and I think that if I resentenced, I'd resentence him to less than what he's serving now, he should decide the Section 2255 petition now. If the Court has that level of confidence, he doesn't need to grant bail pending the determination of the 2255. He can determine the 2255, and that's what should happen. That's what happened to Mr. Carrera in this case, the other Petitioner. That petition got decided, and the defendant was released. And that's what happens, what should happen in the overwhelming majority of cases. If it's not clear, if there is doubt in the minds of the district court, then given the fact that this individual's conviction is final at this point, the benefit of the doubt should go towards him staying in jail until that decision is made. Okay. Let me just see if you— Good, thank you. Okay, we're good? All right. Let's, I guess, give you—we took both of you way over. Thank you very much for your argument. Thank you. I assume you have a few closing remarks you'd like to give us. Let's give you two minutes for rebuttal. I think the government expresses a remarkably cavalier attitude towards the potential problem of over-served prison time, and that's something the Supreme Court has taken very seriously, and I can't imagine that any judicial officer wouldn't take it seriously. Judge Watson did not reach the merits of the bail decision in this case. He did so explicitly, and in his written order at ER-7, he explicitly doesn't, and at ER-12, which was the transcript of the oral ruling, he didn't reach the merits. And really what the government is arguing about here are the merits. They're just saying to this court, I think in response to Your Honor's sort of invitation, that, well, the merits aren't too good for Mr. McCandless, so let's take this up on another matter. But these two cases, Carrera and McCandless, were two cases in front of District Judge Watson. He indicated he was going to adhere to his view that without an express grant of authority, he wasn't going to act. And so instead of pursuing additional motions in those cases that were assigned to him, our Johnson-related cases, we just agreed to a stay on those cases. So this really is an issue that's narrow but needs to be decided, and I do urge that the panel shouldn't punt it to another panel. Yeah, it's an easier case in the ACCA case where the person actually over-served the statutory limit, but the ACCA cases, at least in Hawaii, are basically all done. Everybody has been released or has been resentenced or was first admitted to bail and then resentenced. So we have this case, and it seems to me that it's not too likely that you're going to have any other better case in terms of the underlying facts to decide it. In this case, you have a record that showed a 45 percent reduction from the low end of the guideline, which was 262 to 327. You have a new guideline of 151 to 188 if we're right, and it seems to me we're really in the area that it's potentially over-served time. But we have a district judge who feels that without this court telling him, he can take up the matter. He can't. Yeah, okay. Thank you very much for your arguments. The case just argued will be submitted.
judges: Wallace, Farris, Watford